1

2

3

4

5

6

7

8                            **IN THE UNITED STATES DISTRICT COURT**

9                           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JOANN BASTO,                                 No.  2:18-CV-3140-DMC

12                    Plaintiff,

13         v.                                      MEMORANDUM OPINION AND ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                      Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19    review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20    Pursuant to the written consent of all parties, see ECF Nos. 7 and 12, this case is before the

21    undersigned as the presiding judge for all purposes, including entry of final judgment, see 28

22    U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits.  See ECF Nos. 18

23    and 19.

24              The Court reviews the Commissioner's final decision to determine whether it is:

25    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

                                              1

a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

<u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  <u>See Hammock v.</u>

<u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, <u>see Thomas v.</u>

<u>Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th

Cir. 1988).

       For the reasons discussed below, the matter will be remanded for further

proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

       To achieve uniformity of decisions, the Commissioner employs a five-step

sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R.

§§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 1, 2015.  See CAR 15.[1]

In the application, plaintiff claims disability began on November 2, 2015.  See id.  Plaintiff's

claim was initially denied.  Following denial of reconsideration, plaintiff requested an

administrative hearing, which was held on August 2, 2017, before Administrative Law Judge

(ALJ) Arthur Zeidman.  In a December 20, 2017, decision, the ALJ concluded plaintiff is not

disabled based on the following relevant findings:

> 1.   The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine;
>
> 2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.   The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can push and pull ten pounds frequently and 20 pounds occasionally; the claimant can balance, stoop, kneel, crouch, and crawl frequently; the claimant can work at unprotected heights occasionally;
>
> 4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-29.

After the Appeals Council declined review on October 26, 2018, this appeal followed.


## III.  DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ failed to properly evaluate

plaintiff's headaches at Step 2; (2) the ALJ failed to include non-exertional limitations in his

residual functional capacity assessment; (3) the ALJ failed to provide adequate reasons for

finding plaintiff's subjective statements and testimony not credible; (4) the ALJ failed to properly

evaluate the opinions of Drs. Sequeira and Chen; and (5) the ALJ's residual functional capacity

determination is not supported by substantial evidence.

---

[1]   Citations are the to the Certified Administrative Record (CAR) lodged on June 4, 2019.  See ECF No. 15.

1    **A.     Headaches**

2          To qualify for benefits, the plaintiff must have an impairment severe enough to

3    significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

4    404.1520(c), 416.920(c).[2]   In determining whether a claimant's alleged impairment is sufficiently

5    severe to limit the ability to work, the Commissioner must consider the combined effect of all

6    impairments on the ability to function, without regard to whether each impairment alone would be

7    sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42

8    U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of

9    impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

10   that has no more than a minimal effect on an individual's ability to work.  See Social Security

11   Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

12   SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

13   providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20

14   C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

15   See id.

16          At Step 2, the ALJ determined plaintiff's degenerative disc disease of the lumbar

17   spine is plaintiff's only severe impairment.   See CAR 18.  The ALJ concluded plaintiff's

18   headaches are not a medically determinable impairment and, as a result, did not conduct a

19   severity analysis.  See id.  Regarding plaintiff's headaches, the ALJ stated:

20          . . .[T]he undersigned has determined that the claimant's alleged migraine
             headaches are non- MDI [medically determinable impairment] because
21           they are not demonstrable by medically acceptable clinical or laboratory
             findings.  A head CT was normal with "no evidence of acute intercranial
22           process" (5F/2).  A treating provider, Thanh Tran M.D., characterized the
             claimant's head CT as "unremarkable" (14F/2).  An x-ray of the cervical
23           spine was unremarkable and only showed loss of lordosis with no disc
             degeneration or foraminal stenosis (5F/1).  The undersigned places great
24           weight on an MRI of the claimant's brain that showed "no acute

25   / / /

26   ───────────────
             [2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
27   pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
     carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
     appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
28   in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

intercranial pathology" (10F/1).  As a result, the undersigned finds this condition not medically determinable.

CAR 18.

According to plaintiff, this determination is flawed because, contrary to the ALJ's finding, "Plaintiff's migraine headaches have been diagnosed by a medical doctor which is an acceptable medical source under the SSA regulations."  ECF No. 18, pg. 10.  According to plaintiff, Dr. Kuluva, a neurologist, diagnosed "Migraine equivalent" on December 30, 2015.  See id. (citing CAR 375).  Plaintiff also notes that Dr. Tran also diagnosed "Headache" on March 5, 2016.  See id. at 11 (citing CAR 290).  Plaintiff states that Dr. Sequeira also noted "chronic migraine" in support of his opinions.  See id. (citing CAR 519-26).  Finally, regarding the negative diagnostic testing referenced by the ALJ, plaintiff states:  The negative EEG and CT scans the ALJ points to are a red herring – the lack of positive findings does not indicate a lack of headache severity or that headache is incorrectly diagnosed."  Id. at 13.

Defendant argues any error was harmless.  According to defendant:

> At most, the ALJ's evaluation of Plaintiff's headaches presented a harmless error at step two. Step two is a *de minimis* screening tool to determine whether to proceed to subsequent steps in the sequential disability analysis, including the RFC finding. As was the case here, if there is a single medically determinable impairment that is severe at step two, the ALJ continues the analysis considering all symptoms (AR 20 [ALJ explaining that he "has considered all symptoms"]).
> Thus, in order to show reversible error, Plaintiff must prove that migraines required greater functional limitation than the ALJ already accommodated in the RFC finding, which she does not do (Pl.'s Br. at 10). *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that ALJ's error at step two was harmless in light of the RFC analysis); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimant failed to establish error at step two because she failed to identify any functional limitations).

ECF No. 19, pg. 4.

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Id. at 1056; see also Robbins

v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at

1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004),

the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's

testimony.  Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's
> lack of credibility and his residual functional capacity, and in light of the
> objective medical evidence on which the ALJ relied there was substantial
> evidence supporting the ALJ's decision.  Any error the ALJ may have
> committed in assuming that Batson was sitting while watching television,
> to the extent that this bore on an assessment of ability to work, was in our
> view harmless and does not negate the validity of the ALJ's ultimate
> conclusion that Batson's testimony was not credible.
>
> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

claimant's age and education.  The Ninth Circuit also considered harmless error in the context of

the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a

medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d

1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court

stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility

finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

error."  See id. at 1162.  The court articulated the difference between harmless error standards set

forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the
> ALJ would have made a different decision absent any error. . . it is whether
> the ALJ's decision remains legally valid, despite such error.  In Batson,
> we concluded that the ALJ erred in relying on one of several reasons in
> support of an adverse credibility determination, but that such error did not
> affect the ALJ's decision, and therefore was harmless, because the ALJ's
> remaining reasons *and ultimate credibility determination* were adequately
> supported by substantial evidence in the record.  We never considered what
> the ALJ would do if directed to reassess credibility on remand – we
> focused on whether the error impacted the *validity* of the ALJ's decision.
> Likewise, in Stout, after surveying our precedent applying harmless error
> on social security cases, we concluded that "in each case, the ALJ's
> error . . . was inconsequential to the *ultimate nondisability determination*."

1
2
3

> Our specific holding in <u>Stout</u> does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

4

<u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

5

Thus, where the ALJ's errs in not providing any reasons supporting a particular

6 determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and

7 the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

8 not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is

9 flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either

10 legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is

11 harmless if it is inconsequential to the ultimate decision because the ALJ's disability

12 determination nonetheless remains valid.

13

Here, the Court finds that the ALJ erred in determining plaintiff's headache

14 impairment is not medically determinable.  As plaintiff notes and the record supports, the

15 condition was diagnosed by several medical doctors, who constitute acceptable sources.

16 Defendant appears to concede the point.  Because the ALJ provided an analysis regarding

17 plaintiff's headache impairment, but that analysis was not based on substantial evidence, the

18 Court applies the <u>Batson</u> standard to determine whether the error is harmless.  Under this

19 standard, the Court finds that it not.

20

Under the <u>Batson</u> standard, the ALJ's error in finding plaintiff's headaches not to

21 be a medically determinable impairment is only harmless if it is inconsequential to the ultimate

22 decision.  According to defendant, the error is inconsequential because, even if headaches had

23 been found to be a medical determinable impairment, plaintiff failed to submit evidence showing

24 that impairment resulted in functional limitations.  Given the lack of evidence of functional

25 limitations relating to headaches, defendant concludes the ALJ's ultimate residual functional

26 capacity assessment – which did not include any limitations related to headaches – remains valid

27 despite the error.

28 / / /

The Court does not agree.  Contrary to defendant's contention, plaintiff did in fact present evidence of functional limitations associated with headaches which would have at least satisfied the de minimis severity standard at Step 2.  Specifically, as the ALJ noted, Dr. Som, plaintiff's treating orthopedic specialist, opined that plaintiff was unable to engage in her previous work due in part to chronic migraine headaches.  See CAR 25 (citing Exhibit 17F, pg. 32).  The ALJ rejected Dr. Som's opinions, stating: "[T]he claimant's alleged migraine headaches are non-MDI [medically determinable impairment] and her back pain can be relieved with conservative measures such as medication, physical therapy, heat and ice."  CAR 25.  The ALJ's analysis of Dr. Som's opinion indicates at least one consequence of the ALJ's error at Step 2.  Specifically, had the ALJ correctly determined that plaintiff's headaches are in fact a medically determinable impairment, the ALJ would then have been required to evaluate Dr. Som's opinion in this regard further at Step 4.  This further analysis could have resulted in the ALJ giving more weight to Dr. Som's opinion regarding the limiting effects of plaintiff's headaches.  This, in turn, could have resulted in a finding of functional work-related limitations associated with headaches and a different residual functional capacity assessment at Step 4.  Finally, a different functional capacity assessment which included limitations associated with headaches could have resulted in a different vocational finding at Step 5.

Because the ALJ erred at Step 2 in finding plaintiff's headaches not to be a medically determinable impairment, and because the ALJ compounded this error at Step 4 when evaluating the opinions offered by Dr. Som, and because these errors could have further affected the sequential evaluation, the Court cannot say the Step 2 error was harmless under Batson.  The matter will be remanded to the agency for further consideration of plaintiff's headaches at Step 2 and, if necessary, throughout the remainder of the sequential evaluation process.

## B. Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

1   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

2   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

3   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

4   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

5   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

6   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

7   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

8           If there is objective medical evidence of an underlying impairment, the

9   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

10  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

11  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

12          The claimant need not produce objective medical evidence of the
            [symptom] itself, or the severity thereof.  Nor must the claimant produce
13          objective medical evidence of the causal relationship between the
            medically determinable impairment and the symptom.  By requiring that
14          the medical impairment "could reasonably be expected to produce" pain or
            another symptom, the Cotton test requires only that the causal relationship
15          be a reasonable inference, not a medically proven phenomenon.

16  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
    Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
17

18          The Commissioner may, however, consider the nature of the symptoms alleged,

19  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

20  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

21  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

22  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

23  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

24  physician and third-party testimony about the nature, severity, and effect of symptoms.  See

25  Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

26  claimant cooperated during physical examinations or provided conflicting statements concerning

27  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

28  claimant testifies as to symptoms greater than would normally be produced by a given

10

1  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

2  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

3          Regarding reliance on a claimant's daily activities to find testimony of disabling

4  pain not credible, the Social Security Act does not require that disability claimants be utterly

5  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

6  repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

7  does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

8  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

9  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

10  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

11  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

12  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

13  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

14  activities are not easily transferable to what may be the more grueling environment of the

15  workplace, where it might be impossible to periodically rest or take medication").   Daily

16  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

17  his day engaged in pursuits involving the performance of physical functions that are transferable

18  to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

19  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

20  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

21          At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony

22  to determine residual functional capacity.  As to plaintiff's credibility, the ALJ stated:

23          The claimant alleges she has a physical impairment, which precludes her
        from performing basic work activities (6E).  Specifically, she has been
24          diagnosed with degenerative disc disease (16F/27).  The claimant alleges
        that pain is the primary symptom she suffers from because of her
25          impairment (Hearing Testimony, 2F/13).

26          CAR 20.

27  ///

28  ///

11

1        Following an extensive discussion of the objective clinical evidence, the ALJ

2    stated:

3           As for the claimant's statements about the intensity, persistence, and
            limiting effects of . . . her symptoms, they are inconsistent because the
4           claimant is still able to engage in the activities of daily living despite the
            pain from her back impairment.  As such, the undersigned finds that the
5           claimant's allegations of symptoms and limitations relative to
            degenerative disc disease are partially inconsistent with the objective
6           findings.  While the objective record supports the claimant's contention
            that she has back pain, it does not appear to be as intense, persistent, or
7           cause the limiting effects the claimant reports.  The claimant has testified
            to back pain so severe that she could not function (Hearing Testimony).
8           She indicated that she was "completely in pain," which was the reason
            why she could no longer work (Hearing Testimony).  However, the
9           claimant has indicated at various times that her pain level was a ten out of
            ten (16F/2, 7F/9).  However, the claimant was able to partake in activities
10          of daily living, which included taking her daughter to the park for walks,
            grocery shopping, cooking, driving her older daughter to work, and
11          exercising (Hearing Testimony, 17F/74).  The claimant reported that her
            pain is worse when she sits; however, the claimant sits for long periods to
12          complete her online schoolwork (7F/17. Hearing Testimony).  The
            claimant reports that the pain is so bad that she cannot focus on her
13          schoolwork; however, she is currently in the middle of completing her
            thesis, and reports spending four hours a day on schoolwork (Hearing
14          Testimony).  The claimant reports that the pain she suffers is so intense
            that she cannot partake in basic work activities, yet she rated her worst
15          pain at a level five on a ten-point scale as recently as 2017 (2E/2. 18F/30,
            17F/49).  The claimant reports persistent and intense back pain, but
16          indicates that she did not want to try the epidural injections her providers
            recommended, not because she believed the treatment would not be
17          beneficial, but because she was not working (17F/36, 50, Hearing
            Testimony).  This is inconsistent with the claimant having such disabling
18          back pain that it would keep her from performing basic work-related
            activities.  The claimant reports that even when her pain is at a ten out of
19          ten, it can be relieved with medication (16F/2).  While the claimant
            reported difficulty walking, her gait was often described as normal
20          (17F/39. 49, 17F/17, 9F/1. 3).  The claimant described her pain as
            fluctuating, and lasting anywhere from two to three second to over an hour
21          with medication, through she is reluctant to take it for fear of dependence
            (7F/17, 17F/68, 16F/2, Hearing Testimony). The claimant reports resulting
22          pain radiating down her legs, however, a nerve conduction study found
            only mild polyradiculopathy down both legs, with no active denervation
23          and the majority of physical exams have found that the claimant's lower
            extremity strength to be within normal limits (6E/2, 17F/39, 11F/27.
24          17F/45, 51, 54, 56).  The claimant reports that she has to constantly "rest"
            in order to relieve her pain, but the record shows that she reports
25          conservative measures such as medication will relieve her pain (Hearing
            Testimony, 7F/17).  Notably, in spite of the pain she describes as so severe
26          it precludes her from functioning, the claimant participates in cardio
            exercise and lists weights for thirty minutes a day, four days a week
27          (Hearing Testimony, 17F.4).

28       CAR 22-23.

                                          12

1    Though the ALJ found plaintiff's statements as to totally disabling pain not to be

2    credible, the ALJ nonetheless concluded that "she does suffer from pack pain."  CAR 23.  The

3    ALJ states this limitation was taken into account in a residual function capacity assessment that

4    plaintiff can perform a range of less than light work.  See id.

5    In her opening brief, plaintiff argues a number of errors in the ALJ's analysis,

6    some of which are well taken.  For example, the ALJ cites plaintiff's activities of daily living to

7    include taking online education courses and working towards completing a thesis.  See CAR 22.

8    As plaintiff states, however, her schoolwork was difficult to do given her pain.  See ECF No. 18,

9    pg. 14.  Plaintiff states that some days she was able to study for up to four hours over the course

10   of the entre day, while on other days she could not study at all due to pain.  See id.  Further,

11   plaintiff notes that the ALJ cited no evidence about how long plaintiff is able to sit to study and

12   whether she needs rest breaks due to pain.  See id.  The ALJ fails to explain how these limited

13   activities are inconsistent with plaintiff's claims of disabling pain.   In other words, given the

14   limitations to which plaintiff testifies regarding pain, the ALJ has not shown that plaintiff's

15   limited ability to study and complete coursework translates to an ability to maintain full-time

16   competitive employment.  As plaintiff notes:

17
            The ALJ's fourth reason is that plaintiff says she has difficulty
            concentrating but is in the middle of completing her thesis.  The two are
18          not mutually exclusive, it is possible to be working on something and at
            the same time have difficulty concentrating on it.
19

            ECF No. 18, pg. 17.
20

21   The ALJ's credibility analysis is further flawed as a result of the error at Step 2 in

22   determining plaintiff's headaches are not a medically determinable impairment.  As explained

23   above, this error could have resulted in a ripple effect of other errors throughout the sequential

24   evaluation process.  For example, but for the error, the ALJ would have been required to

25   determine whether plaintiff's headache impairment was severe.  The record includes evidence to

26   satisfy this de minimis standard.  Next, but for the error, the ALJ would likely have concluded

27   plaintiff's headaches are a severe impairment, which would have triggered a different analysis of

28   the medical opinions, in particular the opinion offered by Dr. Som, which the ALJ rejected.

Similarly, consideration of plaintiff's headaches as a severe impairment could have resulted in a different less adverse credibility finding at Step 4, which in turn could have resulted in a different vocational finding at Step 5.

The matter will be remanded to the agency for re-evaluation of plaintiff's subjective complaints, specifically her complaints related to headaches should such impairment be found on remand to be severe at Step 2.

### C.      Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

15

1  also Magallanes, 881 F.2d at 751.

2  At Step 4, the ALJ evaluated the medical opinion evidence. See CR 23-26.

3  Specifically, the ALJ assessed opinions offered by the following: (1) Juan Sequeira, M.D.,

4  plaintiff's treating physician; (2) Jess Chen, M.D., plaintiff's treating physician; (3) Steven Lee,

5  M.D., plaintiff's treating physician; (4) Sue Cromwell, MS QRP, plaintiff's treating therapist; (5)

6  Charles Som, D.O., plaintiff's treating orthopedic specialist; (6) Jeanine Kwun,, M.D., agency

7  reviewing physician; and (7) S. Williams, M.D., agency reviewing physician. See id. The ALJ

8  rejected the opinions of Drs. Sequeira, Chen, Cromwell, and Som, and based his residual

9  functional capacity assessment on the opinions of Drs. Lee, Kwun, and Williams. See id.

10  Plaintiff argues the ALJ erred in rejecting the opinions of Drs. Sequeira and Chen,

11  who are both treating sources. See ECF No. 18, pg. 19.

12  1.  Dr. Sequeira

13  As to this doctor's opinion, the ALJ stated:

14  . . .[A]t the request of the agency, Juan Sequeira, M.DD., one of the
    claimant's treating physicians, completed a Treating Doctor Report
15  wherein he opined that the claimant's pain constantly would interfere with
    her ability to perform basic tasks (17F/27. 19F/3). He additionally
16  opinioned that the claimant would need a job that would allow her to shift
    positions every 20 minutes, and that she would need eight ten-minute
17  breaks in the course of an eight-hour workday (19F/3). He further opined
    that she could sit, stand, and walk about two hours in an eight-hour
18  workday, that she could occasionally lift and carry ten pounds, and never
    lift and carry 20 pounds (19F/3). Dr. Sequeira opined that the claimant
19  could rarely stoop, climb ladders or stairs, and could never twist, crouch,
    or squat (19F/4). This opinion is given little weight, as it is inconsistent
20  with the objective medical evidence. A review of the medical evidence
    shows that the claimant's back pain does not interfere with her ability to
21  concentrate and pay attention to a task. For example, the claimant is able
    to pay attention to her schoolwork for at least four hours a day in spite of
22  having back pain (Hearing Testimony). The claimant is able to pay
    attention to the thesis she is currently writing for her master's program
23  (Hearing Testimony). Additionally, the claimant reports that she prepares
    meals, which would likely require standing for longer than 20 minutes at a
24  time (Hearing Testimony). While the claimant has indicated that she has
    to stretch out four to five times an hour when her back pain is bad there is
25  no reason to believe that she will need eight ten minute breaks in the
    course of an eight hour workday because her back pain can be relieved
26  with conservative measures such as ice, heat, and medication (Hearing
    Testimony, 17F/68). There is no reason to believe that the claimant can
27  only sit, stand, or walk for two hours in an eight-hour day. As discussed
    above, the claimant admitted that she sits for longer than two hours to do
28  her schoolwork online (Hearing Testimony). As further discussed above

the claimant walks with a normal gait and has normal strength in her lower extremities, which would allow her to walk or stand for longer than two hours (14F/1. 15F/7-8. 7F/22, 16F/3-4, 17F/33. 46-47). Additionally, as discussed above earlier, the claimant routinely lifts ten-pound weights when she works out, and she should be able to lift 20 pounds as her upper extremities have full strength (17F/69, 74). Finally, there is nothing in the record to support Dr. Sequeira's postural limitations on the claimant. Though the postural maneuvers of stooping, climbing, crouching, or squatting involve the use of the back muscles, frequently performing these maneuvers should not exacerbate the claimant's mild to moderate degenerative back condition. Treating providers have noted that the claimant has full lumbar range of motion (17F/69). The claimant is not limited to more than frequently balancing, stooping, kneeling, squatting, crouching, and crawling. There is no evidence that she cannot twist and squat based on her reports that she works out (17F/74). The claimant participates in cardio exercise and lifting weights four days a week, in 30-minute intervals (17F/74).

CAR 23-24.

Plaintiff argues:

ALJ Zeidman rejects Dr. Sequeira's opinion that back pain interferes with plaintiff's focus because claimant is able to pay attention to schoolwork for at least four hours a day. As discussed above, there is no evidence that plaintiff is able to do so. Further, the evidence is that there are many days where she can do nothing but attend to her pain. Thus, this is not a legitimate reason supported by evidence. Next ALJ Zeidman states that Dr. Sequeira's finding that plaintiff will need eight ten-minute breaks throughout the workday is not plausible because she can use ice, heat, and medication to relieve pain. This reason is not legitimate because administering ice and heat would require a break from work. Accordingly, Dr. Sequeira's opinion should be credited.

ECF No. 18, pg. 19.

The Court agrees. The ALJ rejected Dr. Sequeira's opinion for three primary reasons, none of which is particularly legitimate, let alone convincing. First, the ALJ rejected the doctor's opinion as inconsistent with plaintiff's ability to work towards her master's degree. Second, the ALJ cited plaintiff's ability to prepare meals. Third, the ALJ referenced plaintiff's ability to exercise. For the reasons discussed below, the Court finds none to be based on substantial evidence.

The ALJ cited plaintiff's ability to study and work towards her master's degree as a reason to discount the opinions offered by Dr. Sequeira. As explained above in the context of the ALJ's reference to this same fact when assessing her credibility, plaintiff accomplishes this task on an intermittent basis. Though she can sit for up to four hours a day to study, there is no

1   evidence that these are continuous hours.  Thus, the evidence is consistent with the need for

2   breaks, which both plaintiff and the doctor say are warranted.  Additionally, plaintiff's ability to

3   study and concentrate is totally absent on other days when pain is particularly bad.  Thus, the

4   limitations assessed by Dr. Sequeira are not necessarily inconsistent with plaintiff's ability to

5   engage in online coursework.

6          The ALJ gave Dr. Sequeira's opinion little weight, in part, because he found

7   plaintiff's ability to prepare meals inconsistent with the limitations opined by the doctor.

8   According to the ALJ: "Additionally, the claimant reports that she prepares meals, which would

9   likely require standing for longer than 20 minutes at a time (Hearing Testimony)."  CAR 24.  The

10   ALJ's use of the word "likely" suggests the ALJ has replaced speculation for evidence.  In

11   particular, the ALJ cites no evidence as to the manner in which the plaintiff is able to prepare

12   meals.  To the extent plaintiff must sit to prepare simple meals using a microwave or on a

13   stovetop, her ability to prepare meals could certainly be consistent with the limitations opined by

14   Dr. Sequerira.  And there is no evidence to establish that "preparing meals" necessarily involves

15   standing for increments "longer than 20 minutes at a time."

16          The ALJ also discounted Dr. Sequeira's opinion because he found plaintiff's

17   ability to exercise and lift weights inconsistent with the opined limitations.  The ALJ noted that

18   plaintiff lifts ten-pound weights during 30-minute exercise sessions four times a week and

19   concludes from this activity that "she should be able to lift 20 pounds as her upper extremities

20   have full strength. . . ."  CAR 24.  This conclusion is contradictory in that, if plaintiff's upper

21   extremities have normal strength, and if the amount of weight plaintiff lifts during weight-lifting

22   training is ten pounds, it is reasonable to conclude plaintiff's lifting limit is ten pounds.  Again,

23   with the use of the word "should," it appears the 20-pound limit is based on the ALJ's speculation

24   and not evidence of record.

25          Finally, the Court notes the possibility that the ALJ's error at Step 2 infects the

26   ALJ's analysis of the medical opinions.  Because the ALJ erroneously found plaintiff's headaches

27   to not be a medically determinable impairment, the ALJ failed to assess the effects of plaintiff's

28   headaches on the various medical opinions.  Specifically, symptoms related to headaches could

1 reasonably be expected to limit the manner in which plaintiff was able to engage in her

2 schoolwork.  The matter will be remanded to allow the agency to re-evaluate Dr. Sequeira's

3 opinion.

4         2.    Dr. Chen

5        As to Dr. Chen, also a treating source, the ALJ stated:

> Dr. Chen opined that the claimant should be limited to working six hours a day, lifting no more than 20 pounds and standing/walking for less than two hours a day (17F/63).  He further opined that the claimant could not stoop crawl, crouch, or kneel on a repetitive basis (17F/51).  The undersigned gives this opinion little weight because overall it is inconsistent with the objective record.  There is nothing in the objective medical record that supports the notion that the claimant can only work for six hours a day.  The claimant's back pain is relieved with conservative measures such as medication, and other than her back pain, she has a normal gait, and full strength in her muscles (17F/49, 51, 68).  She is able to sit for extended periods and keep her mind focused on a task such as her schoolwork or writing her thesis (Hearing Testimony).  In short, other than her back pain, which can be relieved by conservative measures, there is no other reason to restrict her work schedule (17F/68).  As discussed above, the claimant has full strength in her legs and a normal gait, she walks for exercise, and given her normal muscle tone and strength, she should be able to stand and walk for longer than two hours (17F/49, 51, 74).  For the reasons discussed above, the claimant can frequently kneel, crawl, stoop, and crouch.  However, the opinion is consistent with the medical record in limiting the claimant to lifting no more than 20 pounds.

CAR 24.

Plaintiff argues:

> In rejecting Dr. Chen's opinion, the ALJ finds it untenable that plaintiff can only work six hours per day because her back pain is relieved by conservative measures. This reason is not legitimate because plaintiff testified that after her pain increases with the amount of activity she performs and that after a certain point she must lay down to relieve pain. Therefore, no legitimate reason is provided to reject Dr. Chen's opinion.

ECF No. 18, pg. 19.

       Again infecting the decision, the Court finds that the ALJ's error at Step 2

undermines his analysis of Dr. Chen's opinions.  Specifically, in rejecting Dr. Chen's opinions,

the ALJ stated: "There is nothing in the objective medical record that supports the notion that the

claimant can only work for six hours a day."  CAR 24.  While the ALJ continued by discussing

evidence related to plaintiff's back pain, the ALJ did not consider possible limiting effects related

1    to plaintiff's headaches.

2    **D.**    **Non-Exertional Limitations**

3        Plaintiff contends the ALJ erred by failing to include medically determinable non-

4    exertional limitations associated with headaches in the residual functional capacity assessment.

5    See ECF No. 18, pg. 11.  Because the ALJ erred at Step 2 in determining plaintiff's headaches are

6    not a medically determinable impairment, it is impossible for the Court to conclude that the ALJ

7    did not err at Step 4 by not including non-exertional limitations associated with headaches.  Had

8    the ALJ not erred, and had the ALJ determined plaintiff's headaches were severe, and had the

9    ALJ accepted Dr. Som's opinions regarding headaches, the ALJ might well have also concluded

10   that plaintiff's residual functional capacity includes non-exertional limitations.

11       The matter will be remanded to the agency to determine whether plaintiff's

12   headaches, which are a medically determinable impairment, result in non-exertional limitations

13   which should be included in plaintiff's residual functional capacity.

14   **E.**    **Residual Functional Capacity Determination**

15       Residual functional capacity is what a person "can still do despite [the

16   individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

17   Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

18   "physical and mental capabilities").  Thus, residual functional capacity describes a person's

19   exertional capabilities in light of his or her limitations.

20       According to plaintiff, the ALJ's residual functional capacity assessment is flawed

21   because it is based on the opinions of non-examining and non-treating sources.  See ECF No. 18,

22   pgs. 19-20.  The Court does not agree.  The opinions of non-examining professionals constitute

23   substantial evidence when, as here, the opinions are consistent with independent clinical findings

24   or other evidence in the record.  See Thomas, 278 F.3d at 957.  Plaintiff reliance on Gallant v.

25   Heckler, 753 F.2d 1450 (9th Cir. 1984), is misplaced.  Plaintiff argues that, under Gallant,

26   evidence from non-examining and non-treating sources cannot constitute substantial evidence to

27   support the ALJ's findings.  In Gallant, however, the court held that evidence from non-

28   examining professions does not constitute substantial evidence where it is contradicted by all

1  other evidence in the record.  See Gallant, 753 F.2d at 1456.  Here, the non-examining doctors'

2  opinions upon which the ALJ relied are supported by opinions offered by Dr. Lee, a treating

3  source.

4          The foregoing is not meant to suggest that the ALJ's residual functional capacity

5  may not be flawed for other reasons discussed in this decision, specifically the ALJ's error at Step

6  2 regarding plaintiff's headaches and the various way that error has infected the remainder of the

7  ALJ's sequential evaluation, including determination of plaintiff's residual functional capacity.

8

9                        **IV.  CONCLUSION**

10          For the foregoing reasons, this matter will be remanded under sentence four of 42

11  U.S.C. § 405(g) for further development of the record and/or further findings addressing the

12  deficiencies noted above.

13          Accordingly, IT IS HEREBY ORDERED that:

14          1.      Plaintiff's motion for summary judgment, ECF No. 18, is granted;

15          2.      Defendant's motion for summary judgment, ECF No. 19, is denied;

16          3.      The Commissioner's final decision is reversed and this matter is remanded

17  for further proceedings consistent with this order; and

18          4.      The Clerk of the Court is directed to enter judgment and close this file.

19

20

21  Dated:  September 23, 2020

22                                          _____
                                            DENNIS M. COTA
23                                          UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28